# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| PAULETTE A. HARRISON | CIVIL ACTION NO. 05-1087 |
|---|---|
| VS. | MAGISTRATE JUDGE METHVIN |
| COMMISSIONER OF SOCIAL SECURITY | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Commissioner's decision is **AFFIRMED.**

*Background*

Born on January 7, 1972, Paulette A. Harrison ("Harrison") is a 34-year-old claimant with a high school education, some college classes, and vocational training at a truck driving training center. (Tr. 154). Harrison has no vocationally relevant past work experience. (Tr. 13).

On October 24, 2003, Harrison filed an application for supplemental security income, alleging disability as of October 6, 2002 due to a ruptured disc in her back and neck. (Tr. 14). Her application was denied initially and on reconsideration, and an administrative hearing was held on December 1, 2004. In an opinion dated December 10, 2004, the ALJ found that Harrison retains the residual functional capacity to perform the full range of light work. (Tr. 19). The Appeals Council denied review, (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner from which Harrison now appeals.

*Assignment of Errors*

Harrison raises two errors on appeal: (1) the ALJ failed to find that she is disabled pursuant to Listing 1.05; and (2) the ALJ failed to property assess her credibility.

*Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1.   If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.  A person who does not have a "severe impairment" will not be found to be disabled.

3.  A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If a person can still perform his past work, he is not disabled.

5.  If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that although Harrison suffers from early degenerative disc disease of the lumbar and cervical spine with pain, impairments that are severe within the meaning of the regulations, she retains the residual functional capacity to perform the full range of light work and is, therefore, not disabled. (Tr. 19-20).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

## I.  Listing 1.04 and Residual Functional Capacity

Harrison contends that she satisfies "one of the listed impairments in Section 1.05" of Appendix I. This regulation, however, refers to amputations, which are not relevant in this case. The undersigned assumes that Harrison intends to argue that she satisfies the requirements of Listing 1.04 for disorders of the spine. Listing 1.04 states:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 220, App. 1, Listing 1.04, Social Security Administration.

Harrison does not specify which portion of Listing 1.04 she allegedly satisfies. After review of the entire record, the undersigned concludes that the medical records do not support a finding that Harrison satisfies any of them.

Harrison injured her back in October 2002 while working as a nursing assistant for a nursing home. The injury occurred while Harrison was putting a patient to bed. Harrison was holding the patient, who weighed 300 lbs., and lowering her to the bed when the patient grasped the bed rail and "plopped down." Harrison felt pain as soon as she straightened up. X-rays taken at the emergency room at Abbeville General Hospital showed "normal lordosis and disc spaces," "unremarkable" SI joints, and mild scoliosis to the left. (Tr. 144). Harrison was prescribed bed rest, heat, ice, and medication by the emergency room doctor. The record shows that Harrison was examined by her family doctor, Dr. Randy Daigle, in October 2002 for this pain. (Tr. 92). The record also shows treatment from Dr. Daigle for various other minor complaints from that time through October 2003.

On December 2, 2002, Harrison was examined by Dr. John Cobb, an orthopedic surgeon, who reported that a CT scan of Harrison's lumbar spine was normal, as was her posture, motor function, and sensory function. (Tr. 104). Dr. Cobb noted that Harrison was "ambulatory," but had restricted range of motion in her lumbar spine. Dr. Cobb also reported that straight leg raise testing was positive bilaterally in the sitting position on the left side more than the right. (Tr. 103). Dr. Cobb diagnosed post-traumatic lumbar pain syndrome, SI joint symptoms on the left, and lumbar spine sprain/strain. (Tr. 104). Dr. Cobb recommended physical therapy.

On January 6, 2003, Dr. Cobb reported that, although Harrison reported increased pain, her stance, posture, gait, motor function, and sensory function were normal. (Tr. 97). Dr. Cobb was unable to identify why Harrison's pain had been exacerbated, but he ordered a lumbar MRI. (Id.). Harrison did not show up for a scheduled appointment on February 5, 2003. On March 19, 2003, notes from Dr. Cobb's office state that Harrison called the office seeking assistance for treatment through the state Office of Family Support. After reviewing Harrison's file, Dr. Cobb noted that he thought Harrison was capable of "some work." (Tr. 95).

Harrison was in an automobile accident on June 8, 2003 and was taken to Abbeville General Hospital for treatment. An MRI of Harrison's cervical spine showed slight-to-moderate C4-5 cervical spondylosis with no fracture or subluxation, normal prevertebral soft tissue, and normal alignment. (Tr. 113). An MRI of Harrison's right shoulder was normal, but she had a possible fracture of a rib. (Id.). Following the accident, Harrison was examined by Dr. Robert D. Franklin, a physical medicine/rehabilitation doctor, on June 24, 2003. Dr. Franklin reported that Harrison complained of injuries to her neck, upper back, and right knee, as well as aggravation of her pre-existing mild low back pain from her nursing home injury. Dr. Franklin reported that

Harrison appeared to have soft tissue pain and he opted to treat her conservatively, noting that he was referring her to Dr. Cobb for a lumbar examination. (Tr. 120). Dr. Franklin examined Harrison again on September 11, 2003, and he reported that although she complained of pain with her cervical range of motion and on her lumbar exam, no spasm was noted in either area. (Tr. 118). On October 7, 2003, Dr. Franklin reported that Harrison had no pain at that time, and that her low back pain had returned to "baseline." Her cervical exam was unremarkable. Dr. Franklin prescribed over-the-counter medication for pain. (Tr. 117).

Harrison did not show up for a scheduled appointment with Dr. Cobb on September 17, 2003. (Tr. 94). On October 8, 2003, Dr. Cobb examined Harrison for the first time since her automobile accident, and reported the following:

> She has some symptoms in her left leg certainly consistent with L5 radiculitis. She has positive straight leg raise test. She has mild decreased sensation, but her motor function is assessed at 5 out of 5.
>
> The MRI is reviewed, she does have a dessicated 5-1 disc, not really causing a great deal of stenosis.
>
> My assessment of this patient is that she is probably getting some dynamic lateral recess stenosis that is presenting as some L5 radiculitis. It doesn't seem to have a significant mass effect.

(Tr. 93). Dr. Cobb recommended a transforaminal selective nerve block at L4-5 on the left side. (Id.).

Considering the medical evidence as a whole, the undersigned concludes that Harrison fails to establish that she meets any of the requirements of any section of Listing 1.04. Clearly, Harrison does not satisfy the requirements of either Listing 1.04(A) for nerve root compression or Listing 1.04(B) for spinal arachnoiditis. Furthermore, the evidence shows that Harrison does not satisfy the requirements of Listing 1.04(C) for lumbar spinal stenosis resulting in

pseudoclaudication, as there is no evidence in the record that Harrison is unable to ambulate effectively as defined in the regulations. Therefore, Harrison's claim that she meets or equals the requirements of Listing 1.04 is without merit.

**2.     Credibility and Complaints of Pain**

Harrison also contends that the ALJ failed to properly assess her credibility regarding her complaints of pain.

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." Carrier, 944 F.2d at 246. This court may not reweigh the evidence. Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, the ALJ found that, although Harrison may indeed suffer some pain and limitations that restrict her ability to lift, stand, carry, sit, stoop, kneel, kneel, and crawl, the severity of pain that she alleges is not supported by the objective medical evidence. In reaching this conclusion, the ALJ relied upon the following evidence: Harrison has been treated conservatively throughout her treatment regime; takes over-the-counter medication for pain; does not have the "stigmata frequently observed in a patient who suffers constant, unremitting pain which is totally unresponsive to therapeutic measures," such as drawn features, significant weight loss, or poor overall health; has never exhibited any motor, sensory, reflex or circulatory deficits on clinical examination; and has not demonstrated continuous muscle spasm or persistent objectively-assessed limitations in range of motion in any of the body areas allegedly affected. (Tr. 16-17).

The undersigned concludes that the ALJ's findings are supported by the record. Although Harrison may indeed suffer from back pain, the record does not support a finding that she is totally disabled because of that pain. Indeed, Dr. Cobb noted on March 19, 2003 that Harrison can do "some work," and on October 7, 2003, Dr. Franklin reported that Harrison's low back pain had returned to "baseline," and that her cervical exam was unremarkable.

For the foregoing reasons, the undersigned concludes that the ALJ's credibility assessment was not erroneous. Therefore, this claim is without merit.

9

*Conclusion*

Considering the foregoing, the court concludes that the Commissioner's decision should be **AFFIRMED.**

Signed in chambers on July 24, 2006.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)